MacLeod-Mancuso, Bonnie H., J.
INTRODUCTION
Plaintiff Richard Blazar (“Blazar”) brings this action against the defendants Mildred Sneider, Fredric Snei-der, and Carol Glick (“the defendants”) alleging breach of contract, recovery under the theory of quantum meruit, and unfair trade practice under Gen. Laws c. 93A. The dispute arises from an attorney-client relationship which existed for the purposes of a previous Superior Court action. Blazar is challenging the propriety of the discharge of his services with regard to that action and claims he is entitled to further compensation. Pursuant to Mass.R.Civ.P. 56, the defendants have now moved for partial summary judgment on Count I of the Complaint, and summary judgment on Counts II and III. For the following reasons, the defendants’ Motion for Partial Summary Judgment is hereby ALLOWED.
BACKGROUND
The undisputed facts are as follows. The defendants retained the services of Blazar on or about December 9, 2004 for Weener et al. v. Glick et al., Civ. No. 03-05000, a Middlesex Superior Court action in which the defendants had intervened as plaintiffs. In that case, the defendants, as executors of the estate of William Sneider and trustees of a trust created by the late William Sneider, were suing the deceased’s former accountant and business associate, Marvin Glick. The defendants requested, and Blazar agreed, that the family attorney, Marc Sneider, be involved in the handling of the matter. Blazar drafted the initial fee agreement between himself and the defendants and contends that the final signed fee agreement was the product of negotiations with the defendants.
The final fee agreement reached between the parties reads, in pertinent part;
[t]he Clients and the Attorney agree that after the Clients have paid the Attorney the amount of $75,000.00 in legal fees, excluding costs and expenses, the Attorney shall not be entitled to receive any more fees in billings per hours, but instead shall receive any further compensation in the amount of 20% of any amounts collected from the defendants from any source, including a judgment, order of [sic] ruling of the Court or any settlement for any particular claim . .. From any contingency amount so collected and paid to the Attorney pursuant to this contingency fee agreement shall be deducted any amount paid to the Attorney for the hourly billing.
(Emphasis added.) At the time, Blazar’s hourly fee was $200.00 per hour.
Weener et al. v. Glick et al., Civ. No. 03-05000 was partially stayed on September 19, 2005 due to the fact that Marvin Glick had filed for bankruptcy on five of the business entities he owned and operated. Around that time, Blazar billed the defendants $74,900.00 in fees and $8,939.54 in expenses. The defendants did not pay that amount in full, leaving an outstanding balance of $13,855.81. Also during the month of September, the defendants hired M. Ellen Carpenter of Roach & Carpenter for representation in the bankruptcy litigation. At the time, Blazar had never advised a client in a bankruptcy matter. Before the end of the month, Fredric Sneider informed Blazar of the defendants’ decision to hire new counsel thus ending their need for his services. Blazar submitted his last bill, in the amount of approximately $9,100.00, on October 3, 2005.
With new counsel, the defendants reached a settlement in the bankruptcy litigation. A stipulation of dismissal was filed in Weener et al. v. Glick et al., Civ. *28 No. 03-05000 on March 13, 2007. Blazar initiated this action on February 26, 2007, and sent a demand letter to the defendants pursuant to Gen. Laws c. 93A. On May 31, 2007, the defendants made an offer to settle the matter for $13,856.00. The defendants now move for partial summary judgment on Count I (breach of contract) and summaiy judgment on Counts II (quantum meruit) and III (Gen. Laws c. 93A).
DISCUSSION
I.Summaiy Judgment Standard
Under Massachusetts statutory and case law, summary judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Mass.R.Civ.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of triable issues. Pederson v. Time, Inc., 404 Mass. 14, 17(1989). If the moving party does not bear the burden of proof at trial, as is the situation here, the movant must either: (1) submit affirmative evidence negating an essential element of the non-moving party’s claim; or (2) demonstrate that the non-moving party’s evidence is insufficient to establish its claim. Kourovacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). Once the moving party establishes the absence of a triable issue, the parly opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17. In so doing, the non-moving party may not rely merely on the allegations and denials of its pleadings, but must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. LaLonde v. Eissner, 405 Mass. 207, 209 (1989); Mass.R.Civ.P. 56(e). Finally, the court will interpret all inferences in the light most favorable to the non-moving party. Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 438 (1995).
II.Count I: Breach of Contract
The defendants seek partial summaiy judgment on Blazar’s breach of contract claim. In his complaint, Blazar contends that the defendants “breached the [f]ee [agreement contract... by failing and refusing to pay . . . the amounts due under the contract.” (Compl. ¶22.) He argues that the language of the agreement entitles him to a pure contingency fee. The defendants, however, assign a different meaning to the terms of the fee agreement. They interpret the agreement to entitle Blazar to a contingency fee only after his billings per hour passed a $75,000 threshold. As such, a grant of the defendants’ motion on this claim would entitle Blazar to only his outstanding expenses and hourly fees. He would thereafter be foreclosed from any further recovery based on the fee agreement.
Given that the parties attach different meanings to the language of the fee agreement, a determination regarding the existence of any actual ambiguity in terms must be made. Whether a contract and its terms are ambiguous is a question of law and is therefore appropriate for summaiy judgment. Berkowitz v. President & Fellows of Harvard College, 58 Mass.App.Ct. 262, 270 (2003), citing Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989). As recited above, the fee agreement provides that “after the Clients have paid the Attorney the amount of $75,000.00 in legal fees, excluding costs and expenses, the Attorney shall not be entitled to receive any more fees in billings per hours, but instead shall receive any further compensation in the amount of 20% of any amounts collected from the defendants from any source . . .” (Compl., Ex. A, ¶7). Simply put, no ambi-guiiy exists in those terms and the agreement is clear on its face. Ambiguity is not created simply because the parties assign different interpretations to the language in question. See e.g. Suffolk Const. Co., Inc. v. Lonco Scaffolding Co., Inc., 47 Mass.App.Ct. 726, 729 (1999). Genuine ambiguity exists only where the “agreement’s terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken.” Id., citing Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989). Such is not the case here. The plain language of the agreement provides that Blazar was entitled to $75,000 of time charges at his ordinary rate of $200 per hour. Once the $75,000 threshold had been reached, “any further compensation” was to be paid out on a twenty percent contingency.
As the undisputed facts reveal, the attorney-client relationship between Blazar and the defendants ended in September 2005, prior to reaching the $75,000 threshold in billings per hour. Therefore, applying the plain language of the agreement, the contingency fee provision was never triggered and Blazar is not entitled to receive thereunder. Accordingly, the defendants are entitled to partial summary judgment on Count I of the Complaint.[2]
III.Count II: Quantum Meruit
In addition, the defendants are seeking summaiy judgment on Blazar’s claim for damages based on quantum meruit. In the absence of a fee agreement, or applicable provisions thereof, an attorney is entitled to fair and reasonable compensation for services rendered, Garnick & Scudder, P.C. v. Dolinsky, 45 Mass.App.Ct. 925, 926 (1998), citing First Nat’l. Bank of Boston v. Brink, 372 Mass. 257, 264 (1977). However, when a valid fee agreement exists to determine proper compensation, the theory of quantum meruit need not, and in fact ought not, be invoked. Id., see also Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 250 (1993) (recognizing that recovery in quantum meruit presupposes that no valid contract covers the subject matter of the dispute and that where such a contract exists, the “law need not create a quantum meruit right to receive compensation for services rendered”). *29 As such, given that a valid fee agreement clearly exists in this matter, Blazar is precluded from recovery based on quantum meruit and the defendants are entitled to summary judgment on this claim as a matter of law.
IV. Count III: Gen. Laws c. 93A
Finally, the defendants also seek summary judgment on Blazar’s claim that the discharge of his services in September of 2005 violated Gen. Laws c. 93A, §11. Gen. Laws c. 93A, §11 make unlawful “unfair or deceptive acts or practices in the conduct of any trade or commerce between two businesses.” Spencer v. Doyle, 50 Mass.App.Ct. 6, 12 n.6 (2000), quoting Mass. Farm Bureau Fed’n, Inc. v. Blue Cross of Mass., Inc., 403 Mass. 722, 729 (1989). Specifically, section 11 requires a commercial transaction between a person engaged in trade or commerce and another person engaged in trade or commerce. Manning v. Ackerman, 388 Mass. 8, 10 (1983). Blazar’s claim fails on this vital point. The defendants employed Blazar to represent them in a legal matter in their capacities as executors and trustees. Thus, regardless of the defendants’ outside business ties and engagements, they were not engaged in trade or commerce within the context of their relationship with Blazar. Notably, Blazar does not put any consequential fact into dispute to contradict this conclusion, nor does he provide a single case to support why his 93A claim ought to survive summary judgment. Accordingly, the defendants are entitled to summary judgment on this claim as a matter of law.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ Motion for Partial Summary Judgment on Count I, and Summary Judgment on Counts II and III of the Complaint is ALLOWED.

Arguments of the parties suggest that recovery for the alleged contingency fee may be accomplished by a showing of bad faith on the part of defendants. “A client’s discharge of an attorney ends the attorney’s right to recover on the contract of employment and, thereafter, an attorney can recover only for the reasonable value of his services on the basis of quantum meruit . . . [However, a court] might permit an attorney to recover under a contingent fee contract on a showing of substantial performance, bad faith termination by the client, and other factors . . .” Craft v. Kane, 51 Mass.App.Ct. 648, 653 (2001), quoting Opert v. Mellios, 415 Mass. 634, 636-37 (1993). Assuming arguendo that the contingent fee clause of the fee agreement was triggered here, Blazar has still failed to show any bad faith on the part of the defendants. Recovery cannot thus be sustained on these grounds as a matter of law.